UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WANDA BUNCH, et al., | CASE NO. C12-1238JLR |
| Plaintiffs, | ORDER DENYING MOTION TO CERTIFY CLASS |
| v. | |
| NATIONWIDE MUTUAL INSURANCE COMPANY, et al., | |
| Defendants. | |

Before the court is Plaintiff Wanda Bunch's motion for class certification. (Mot. (Dkt. # 36).) Ms. Bunch asks the court to certify a class of insurance policyholders who, like herself, were denied insurance benefits under an allegedly flawed interpretation of home insurance policies issued by Defendants Nationwide Mutual Insurance Company ("Nationwide") and Depositors Insurance Company ("Depositors"). (*See id.* at 1.) Ms. Bunch asks the court to certify the class only for purposes of issuing a declaratory judgment on the question of coverage. (*See id.*) The court has reviewed the motion, the

ORDER- 1

submissions of the parties in support and opposition thereto, the governing law, and the record and concludes that class certification is not warranted at this time.[1]  Ms. Bunch's proposed class, as it is currently defined, includes individuals who would have no standing to bring a declaratory judgment action on their own.  This precludes class certification under controlling Ninth Circuit precedent.  Accordingly, the court DENIES Ms. Bunch's motion.

## I.  BACKGROUND

This is an insurance coverage dispute.  Ms. Bunch had an "all risk" home insurance policy with Depositors.  (Compl. (Dkt. # 3) ¶ 16.)  The policy covered any physical loss to Ms. Bunch's dwelling not specifically excluded.  (*See id.*)  The policy language at issue is standard policy language from an insurance form known as "DP3 01/77."  (Hadley Decl. (Dkt. # 16) ¶ 11.)  Ms. Bunch claims that Defendants have been interpreting DP3 01/77's language contrary to Washington law.  (*See* Mot.)

The disputed policy language consists of two exclusions.  First, exclusion number 8—the "water seepage exclusion," which excludes from coverage:

---

[1] Both parties have requested oral argument, but the court denies these requests.  Oral argument is not necessary where the non-moving party would suffer no prejudice.  *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984).  "When a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]."  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*).  "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court."  *Id.*  Here, the issues have been thoroughly briefed by the parties and oral argument would not be of assistance to the court.  Accordingly, the court will not hold oral argument at this time.

ORDER- 2

1        8.   continuous or repeated seepage or leakage of water or steam over a period of time from within a plumbing, heating or air conditioning system
2        or from within a household appliance;

3 (Birk Decl. (Dkt. # 38) Ex. C.)  Ms. Bunch asserts that this exclusion conflicts with

4 another exclusion, number 9—the "wear and tear exclusion," which excludes coverage

5 resulting from wear and tear (among other things) unless wear and tear causes "water to

6 escape" from household appliances:

7        9.   wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog;
8        smoke from agricultural smudging or industrial operations; settling; cracking, shrinking, bulging, or expansion of pavements, patios,
9        foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals.  If any of these cause water to escape from a
10       plumbing, heating or air conditioning system or household appliance, we cover loss caused by the water.  We also cover the cost of tearing out and
11       replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water
12       escaped.

13 (*Id.*)

14     Ms. Bunch argues that these two exclusions are ambiguous when read together.[2]

15 (*See* Mot. at 7, 9-10.)  She argues that if wear and tear causes an escape of water,

16 exclusion 9 implies that the insurer "cover[s] the loss caused by the water."  (*See id.*; Birk

17 Decl. Ex. C (exclusion 9) ("If any of these cause water to escape from a plumbing,

18 heating or air conditioning system or household appliance, we cover loss caused by the

19 water.").)  On the other hand, under exclusion 8 there is no coverage if the loss was

20 caused by "continuous or repeated seepage or leakage of water or steam over a period of

21 ─────────────────

22    [2] Ms. Bunch also argues that exclusion 9 plainly provides coverage and that, accordingly, there is no ambiguity.  (*See* 10/3/13 Mot. (Dkt. # 40) at 8-9.)

ORDER- 3

time." (*See* Mot. at 7, 9-10; Birk Decl. Ex. C (exclusion 8).) Thus, Ms. Bunch argues that if water damage was caused by both seepage over time and wear and tear, the policy is ambiguous with respect to whether the loss is covered. (*See* Mot. at 7, 9-10.) Under Washington law, ambiguities in insurance contracts are construed in the insured's favor. *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1005-06 (Wash. 1992). Under this logic, Ms. Bunch argues that water damage caused by both seepage and wear and tear should be covered. (*See* Mot. at 7, 9-10.)

Ms. Bunch claims to have suffered water damage of this kind. Ms. Bunch owns a home located in East Wenatchee, Washington. (Compl. ¶ 1.) She rents the home to her son. (*Id.* ¶ 8.) In June, 2011, she learned that her home had suffered water damage. (*Id.*) She hired American Leak Detection, which determined that the cause of the damage was a leaky kitchen faucet. (*Id.* ¶¶ 9-10.) American Leak Detection also found an air conditioning leak that caused further water damage in the master bedroom. (*Id.* ¶¶ 13-15.) Ms. Bunch alleges that "[e]ither wear and tear, deterioration, inherent vice, latent defect, or mechanical breakdown" caused the leaks and the water damage. (*Id.* ¶¶ 11-15.) She argues that both the water seepage exclusion and the wear and tear exclusion apply to her loss and, accordingly, that her loss should be covered under her policy. (*Id.* ¶¶ 17-20.) Nevertheless, her claim for insurance benefits was denied, so she brought this action alleging her coverage theory and numerous causes of action against Nationwide and Depositors. (*Id.* ¶¶ 8, 21.)

Ms. Bunch claims there are many more people like her whose claims were improperly denied. (*Id.* ¶¶ 26-36.) She purports to act on behalf of a putative class of

ORDER- 4

over 1000 Washington policyholders who submitted claims for water damage with Nationwide or Depositors in the last six years and were denied based on the alleged ambiguity contained in exclusions 8 and 9 of DP3 01/77.  (*See id.*)  Ms. Bunch originally filed this complaint in King County Superior Court, but defendants removed it to this court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, §§ 4-5, 119 Stat. 4, 9-13 (2005).  In this motion, Ms. Bunch seeks to have the court certify her proposed class pursuant to Federal Rule of Civil Procedure 23.  (*See* Mot.)

## II.   ANALYSIS

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 23.  A party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) allows a class to be certified if it satisfies the requirements of numerosity, commonality, typicality, and adequacy, as follows:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, a class must fall into one of the categories of class actions described in Rule 23(b).  Fed. R. Civ. P. 23(b).  Within the framework of Rule 23, the district court has broad discretion with respect to class certification.  *Zinser*, 253 F.3d at 1186.

Rule 23 does not set forth a mere pleading standard. *Wal-Mart Stores, Inc. v. Dukes*, --- U.S. ----, 131 S. Ct. 2541, 2551 (2011). A district court is not only at liberty to but must conduct a "rigorous analysis" of the moving party's claims to ensure that the requirements of Rule 23 are met. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "In many cases, 'that "rigorous analysis" will entail some overlap with the merits of plaintiff's underlying claim. That cannot be helped.'" *Ellis*, 657 F.3d at 980 (quoting *Dukes*, 131 S. Ct. at 2551).

The precise makeup of Ms. Bunch's proposed class has been a moving target. Originally, Ms. Bunch proposed a class consisting of all Washington insureds whose claims were denied "based on the ambiguity in the policy":

> All insureds with respect to property located in the State of Washington who have submitted claims for water damage and whose claims were denied in whole or in part within six years of the commencement of this action based on the ambiguity in the policy for coverage for water damage caused by wear and tear; marring; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; contamination; smog; smoke from agricultural smudging or industrial operations; settling; cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings; birds, vermin, rodents, insects or domestic animals.

(Mot. at 14 (citing Compl. ¶ 28).) However, Defendants responded to this definition by arguing that it defined a class that was not ascertainable and was improperly "fail safe," among other problems. (*See* Resp. (Dkt. # 51).) Ms. Bunch responded in turn and sought to clarify exactly who would be in the class under its definition: "it is obvious who the proposed class members are: all insureds, like Bunch, who asserted a non-weather

related water damage claim under dwelling policy form DP3 01/77." (Reply (Dkt. # 53) at 7.)

For purposes of this motion, the court will assume that Ms. Bunch's more recent and specific characterization of the proposed class is accurate.[3] (*See id.*) Further, the court will assume that Ms. Bunch meant to include only insureds whose claims were denied—any other interpretation would be bizarre. The court utilizes the latter definition in part because it appears to be the less troublesome of the two, and in part because Ms. Bunch asserted it specifically in response to concerns about the ambiguity of her original class definition, making it presumably a more accurate reflection of Ms. Bunch's proposed class. (*See* Reply at 7.) The court will operate on the assumption that the class consists of "[a]ll insureds with respect to property located in the State of Washington who submitted non-weather related water damage claims within six years of the commencement of this action" and had their claims denied. (*See* Resp. at 8.)

Problematically, Ms. Bunch's proposed class includes individuals who would lack Article III standing to bring this action on their own. In federal court, a plaintiff must have standing before the court can grant any relief. *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983) ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."). The standing requirement reflects the fact that "Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and

---

[3] If this is not the case, there are additional concerns with the class that would need to be addressed. (*See* Resp.)

'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). To demonstrate standing, a plaintiff must show (1) that he or she has suffered an injury in fact; (2) that the injury is traceable to the conduct complained of; and (3) a likelihood that the injury would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992). This showing must be made even when the relief sought by the plaintiff is declaratory in nature. *See* 28 U.S.C. 2201 (requiring "a case of actual controversy" for declaratory relief to be awarded); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (stating that the phrase "case of actual controversy in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III.")

Some of the individuals in Ms. Bunch's proposed class do not meet this requirement. This is largely due to the fact that coverage determinations are fact-specific and involve numerous different factual considerations. For this reason, there are many potential members of Ms. Bunch's proposed class for whom the declaratory relief sought would not or could not redress any injury. (*See* Mot. at 14); *Lujan*, 504 U.S. at 560-61. For some proposed class members, a favorable interpretation of the policy would simply make no difference: for example, an individual would get no redress if her claims had originally been (or could have been) denied because of unpaid premiums, because some other exclusion operated to deny coverage, or because their deductible exceeded the claim value. Also concerning is the fact that, for many proposed class members, it may be too late to make an accurate coverage determination. If the water damage has already been repaired, it may be impossible to make a post hoc coverage decision that takes into

account, for example, whether the challenged ambiguity would even apply to the individual requesting relief. (Birk Decl. (Dkt. # 38) Ex. C.) For others, it may be impossible to unscramble the egg to determine precisely why coverage was denied in the first place, presenting additional obstacles to the court's ability to redress injury. Fundamentally, each coverage determination involves different facts. Even setting aside concerns about commonality, *see* Fed. R. Civ. P. 23(a), many of the unique facts pertaining to some class members (but not others) would likely preclude standing to seek declaratory relief. *See Lujan*, 504 U.S. at 560-61; *MedImmune*, 549 U.S. at 126-27.

Under controlling Ninth Circuit law, the court may not certify a proposed class containing members who cannot establish an Article III case or controversy. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011).

Ms. Bunch makes a clever, but ultimately misguided, attempt to avoid these problems. (*See* Mot. at 10-13.) She asserts that she and her proposed class base their claims not strictly on Defendants' denial of coverage, but on Defendants' failure to properly investigate water damage claims. (*Id.*) If this were truly the only question being answered on behalf of the class, some of the court's concerns about fact-specific coverage determinations would be allayed. But this would raise new concerns as well. In particular, the court would be able to grant declaratory relief only for class members alleging that a proper investigation would have resulted in a positive determination of coverage. Any class member not so alleging would have suffered no injury from any deficiency in the investigation and would therefore lack standing. *Lujan*, 504 U.S. at

ORDER- 9

560-61. Yet the court has no information about which class members allege they would be covered in the event of a favorable ruling and which would not; to the contrary, Ms. Bunch asserts that the class includes "all insureds, like Bunch, who asserted a non-weather related water damage claim under dwelling policy form DP3 01/77." (*See* Reply at 7.) As above, there would also be challenges associated with the difficulty of making a post hoc coverage determination long after most water damage has likely been repaired. In addition, there may be some class members for whom a reasonable investigation was, in fact, conducted but it was nevertheless determined that no coverage was available. All of these individuals would be included in the class as it is presently constructed. (*See* Reply at 7 ("It is obvious who the proposed class members are: all insureds, like Bunch, who asserted a non-weather related water damage claim under dwelling policy form DP3 01/77.").) But these individuals would lack standing because they were not injured by the alleged ambiguity and would be unaffected by the proposed declaratory relief. Accordingly, the court concludes that the class cannot be certified because there are insufficient allegations to establish standing for all class members. *See Mazza*, 666 F.3d at 594; *Stearns*, 655 F.3d at 1024.

### III. CONCLUSION

Ms. Bunch has defined a class that the court cannot certify. Accordingly, Ms. Bunch's motion to certify (Dkt. # 36) is DENIED. In addition, the court notes that Ms. Bunch has a motion for partial summary judgment currently pending in this case. (*See* 10/3/13 Order.) Denial of class certification does not deprive the court of CAFA

jurisdiction over that motion. *United Steel, Paper, & Forestry, Rubber, Mfg., Energy, Allied Indus. Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1089 (9th Cir. 2010). Nevertheless, in light of the fact that Ms. Bunch brought the motion on behalf of "herself and the proposed class," the court ORDERS Ms. Bunch to notify the court within 3 days of the date of this order whether the motion should be decided on behalf of Ms. Bunch alone, or whether instead it should be struck without prejudice to refiling after any questions pertaining to class certification have been fully resolved.

Dated this 17th day of December, 2013.

JAMES L. ROBART
United States District Judge

ORDER- 11